Parker, J.
With respect to the objections taken at the trial, which relate to the swearing of the appraisers, we are all of opinion that they do not avail against the levy, so as to render it void.
The terms of the statute, relied on to support the third exception, can be construed to mean nothing more than that any justice of the peace, within the county, may administer the oath; and the practice adopted in this case, of administering the oath by one of the appraisers, who happens to be a magistrate, and he, either before or afterwards, taking the oath before some other magistrate, has prevailed very generally, and may often be convenient. We certainly see no legal objection to it.
[ * 74 ] * The case of Drew vs. Canady, cited at the bar to support this objection, differs widely from the case under consideration. The principle, on which that decision rests, is that a referee should not, by any act of his own in another capacity, give himself a jurisdiction in a cause, which he is to hear and determine. The acknowledgment of the parties to a submission before a justice of the peace is essential to the jurisdiction of the referees. But appraisers derive their authority from the appointment of the sheriff, according to the provisions of the statute. The oath does not give them authority, but qualifies them for executing it.
*63 As to the objection, that the judgment debtor administered the oath to one of the appraisers, we are also of opinion that this does not make void the levy. The counsel for the demandant has argued that he, being interested, is not a proper certifying officer of the fact, that the appraisers were sworn. It is a sufficient answer to the objection, that the return of the sheriff is the proper evidence that the appraisers were sworn ; and it has been decided, we think correctly, that although there should be no certificate from the magistrate who swore the appraisers; yet if it appeared, by the return of the sheriff, that they were duly sworn, the levy would be val’d, if there were no other objection to it.
The other objection respects the proceedings of the appraisers As to the first branch of this objection, that three separate parcels of the land levied upon were appraised by one estimate, without specifying the separate value of each parcel; since all the several lots of land were taken as Whiting's sole property, and as it is at least doubtful whether he could redeem one lot without redeeming .he whole which was set off upon the execution, we are not prepared to say that it was necessary to make a separate appraisement of each lot.
But it is not necessary to determine this question; for, with respect to the three lots of land so appraised, we are all of opinion that, for another cause, the levy is void. This cause is contained in the last branch of the exception to the * pro- [ * 75 ] ceedings of the appraisers, viz. that the appraisers deducted from the value of the land the supposed amount of an encum brance; which encumbrance was an attachment in a suit pending at the time of the levy.
The consequences of establishing such a proceeding by our decision would be exceedingly mischievous.
A suit pending may be discharged in various ways, without ever coming to judgment. The plaintiff in the suit may fail of proving his demand on trial, may become nonsuit or discontinue; or, if he should finally prevail, his damages are uncertain until judgment is rendered. And even after judgment, the debtor may satisfy it without an execution being sued; or the creditor may seize other property upon his execution ; or he may take the person of his debtor; or may neglect to levy his execution • upon the land attached, until he has lost his lien by the expiration of thirty days after judgment. In all which cases the land is free for the second attaching creditor, without any diminution of its value by reason of any prior attachment.
Now, amidst all these uncertainties, to value an attachment on an undetermined suit, as an encumbrance upon the land, would be pal *64 pably absurd. If the appraisers conjecture the value,—and they can do little more,—it follows that the land will not be justly appraised; and it might well happen, if such were the law, that the creditor, who causes his execution to be levied on land so circumstanced, having the conjectural value of such an encumbrance deducted, might obtain a title to the land of his debtor for a sum beyond all proportion less than its known value, and thus, instead of having his debt satisfied, which is all that the law contemplates, may profitably speculate upon the misfortunes of his debtor; who may be unable, without great sacrifices, to redeem his estate within the time limited by law.
For these reasons the Court are unanimous in opinion,,that the proceedings of the appraisers, with respect to the three first described lots of land, were irregular and void. And the [ * 76 ] verdict must be established, and judgment rendered * accordingly in favor of the demandant for that part of the land demanded. And as no sufficient objection appears to the levy upon the remaining lot, the verdict must be altered, so that the tenant may continue to hold that lot against the demandant.
To prevent difficulties of this serious nature in future, it may be proper to observe, that when land is attached, and it is known that there has been a previous attachment upon it, the practice has been for the second attaching creditor to delay his proceedings in court, until the suit, on which the prior attachment was made, is concluded. So that if there should be a levy by the first creditor, the second may take whatever is left; or, if the whole should be taken, he may look to other property for the satisfaction of his judgment; or, if there should be no levy by the first creditor, he may then have all the land to levy upon. The only inconvenience of this practice is the delay, which a creditor thus situated may submit to or not, according to his opinion of the ability of the debtor to discharge the debt from other property than that which is thus attached.