## FLETCHER *v.* THE STATE CAPITAL BANK.*

When the appraisers in the levy of an execution upon land, appraise it not by the acre but in gross, it is no legal objection to the validity of the extent that they certify the number of acres, deducting a certain quantity for roads, although it does not otherwise appear that there are any highways upon the land.

If the debtor and his family, at the time of the levy, occupy the premises as their family home, the extent is properly made, subject to the homestead exemption, although neither the debtor nor his wife make application to the officer levying the execution to set off the homestead in the statute mode.

*It seems* that the homestead right, given by the statute in such case to the debtor in his own right, is not lost by the neglect to make such application to the officer; but if it is, the inchoate right of the wife to the statute homestead, upon the death of her husband, like her inchoate right of dower, is such an incumbrance upon the estate that the appraisers may make a deduction on account of it from their estimate of the value of the entire estate.

Another creditor, subsequently levying upon the same land, although his cause of action accrued prior to January 1, 1852, thereby acquires no estate in the land by reason of the first levy being made subject to the homestead exemption, and of a deduction from the estimated value of the land on account of it.

An error of the appraisers in estimating the amount of the deduction cannot be proved by parol for the purpose of invalidating the extent; but if it should appear to have been estimated too high, and the land consequently to have been set off at an undervaluation, the extent, though made subject to the incumbrance thus over estimated, is not thereby invalidated.

WRIT OF ENTRY, dated July 22, 1856, to recover a tract of land in Lyme. The case was tried by the court upon the general issue.

The plaintiff introduced an office copy of a judgment, rendered at the Court of Common Pleas, October term, 1855, in his favor against Arthur Latham and O. H. Latham, partners, under the firm of A. Latham & Co., and

---

*EASTMAN and FOWLER, J. J., do not sit.

Beza Latham, for $1,481 damages, and $17.69 costs, founded on four promissory notes, three of which were dated prior to January 1, 1852, and the fourth subsequent to that day; all payable to the plaintiff, or order, and signed A. Latham & Co. and B. Latham, jointly and severally, and a copy of an execution issued thereon, and of the return of an extent of the same, under date of March 15, 1856, on an undivided portion of the demanded premises. The plaintiff farther introduced a copy of a judgment recovered by him at the October term, 1855, of the Court of Common Pleas, for $1,099 damages, and $19.44 costs, founded on a joint and several note of A. Latham and B. Latham, dated December 16, 1847, payable to the plaintiff, or order, and of an execution which issued thereon, and a return of an extent thereof on said 15th of March, 1856, on the other undivided portion of the demanded premises. Several exceptions were taken by the defendants to these extents, and motions for leave to the officer to amend his returns were made by the plaintiff, which, however, are unnecessary to be stated.

The defendants introduced an office-copy of a judgment in their favor against B. Latham, recovered at the October term, 1854, of the Court of Common Pleas for Merrimack county, for $15,691.46 debt, and $18.85 costs, and of an execution which issued thereon, October 20, 1854, and the return of an extent thereof on the 22d of March, 1855, on the demanded premises, and other adjoining land as the estate of B. Latham. It was admitted that the judgments under which both parties claimed were founded on just debts, and that the defendants' judgment was founded on a debt accruing after the 1st of January, 1852, the date limited in the homestead exemption act. The certificate of the appraisers in the extent of the defendants' execution sets forth that they have examined several tracts of land shown to them, &c. The first containing twenty-nine acres, ninety-four square rods, described by metes and

bounds, was admitted to contain the same premises covered by the plaintiff's two levies. In the description of this tract no mention is made of any highway. The description of the second shows it is bounded for a short distance upon a highway, and the description of the third includes a highway in it. At the close of the description of the third lot the certificate proceeds as follows: " containing twenty-two acres, ten square rods, deducting for road through said lot sixty-four square rods, leaving twenty-one and one half acres and twenty-six rods; also, deducting from lots one and two, three and three fourth acres for roads, and appraise the same at its just value, do, upon our oaths say, that the same tracts of land are of the value of $13,690, and no more; subject to the widow's dower and the homestead exemption, and we have set off the same land by metes and bounds as aforesaid, in part satisfaction of this execution."

The plaintiff objected to this extent because of the deduction for roads, and because it was made subject to the homestead exemption, and introduced evidence to show that the deductions were made by direction of the creditor, and that five hundred dollars were deducted on account of the homestead. This evidence was objected to by the defendants. It was admitted that the debtor, B. Latham, and his wife, resided at the time of this levy in the dwelling-house on the demanded premises, which they occupied as their home; that neither B. Latham nor his wife, nor any other person, applied to the officer to have the homestead set off, and that B. Latham was present at the levy, and had opportunity to make the application.

The defendants moved for leave to the officer to amend his return, if it should be found necessary, so that it should appear by the return that a deduction from the value of the land was made on account of the incumbrance constituted by roads existing on tracts two and three, and that the land covered by the roads was not excepted from the

levy. The plaintiff contended, that without parol evidence as to the deduction on account of the homestead, the levy was void, because it was made subject to an incumbrance which did not in law exist, except at the option of the debtor, and which could be assigned only upon application of the party entitled to it, in the mode prescribed by the statute.

Upon the several motions for leave to the officers to amend, the court ordered that such amendments were to be made as might be allowed by this court upon the final hearing of the cause; and thereupon the court found that the defendants did disseize the plaintiff in manner, &c., subject to the opinion of the whole court upon the several exceptions taken, and upon the effect of the evidence aforesaid, with or without the allowance of the proposed amendments; judgment to be entered upon the said finding, or the same to be set aside and the issue found in favor of the defendants, or the cause sent to a new trial.

*H. Hibbard*, for the defendants.

The defendants' levy was properly made, subject to the homestead exemption; that was an existing incumbrance. The judgment debtor, with his wife, occupied the premises. Though the homestead was not set off in the way provided in secs. 3 and 4 of the homestead act, it was a right then subsisting in him, and contingently in the wife upon his death, to exist in her so long as she should continue to occupy the land. It could be set off to her by the court of probate, under the provisions of chap. 167 of the Revised Statutes.

The case of *Norris* v. *Moulton, Adm'r*, 34 N. H. 392, is directly and conclusively in point. The court there say: "The homestead exemption from attachment and levy exists during the life of the husband, equally whether he has been debtor in execution or not; and the same right which he had to hold under the exemption against his

judgment creditor, survives to the widow, to hold against the administrator, creditors, heirs and devisees, which in effect is against all the world, so long as she shall continue to occupy it." They go on to say, that though no method was prescribed by the law, this right could be set out and assigned to the widow under the provisions of chap. 167 of the Revised Statutes, as was done in that case, it having been remitted by the Supreme Court to the court of probate for that purpose.

So here, the judgment debtor had a present certain interest, and his wife a contingent or inchoate interest in the land, by virtue of the homestead exemption. After the set-off it was an undivided interest in common with that of the judgment creditor. It was real estate. Revised Statutes, chap. 1, sec. 17.

It was for the right of both husband and wife that the allowance was made in this instance. As in the case of the widow's right, no mode for its assignment was provided by the act, after the set-off; but it was assignable by partition, under the provisions of chap. 206 of the Revised Statutes, relating to "partition of real estate." The terms of the first section are very general and broad : " One or more persons, having or holding real estate with others, may have partition thereof in the manner hereinafter provided." The method prescribed is by petition to the Superior Court, or, where there is no dispute about the title, the application may be to the court of probate.

Analogous to this is the case of the wife's inchoate right of dower, contingent upon her surviving the husband, without having relinquished her right. It does not seem to be denied that that is such an interest as might properly be excepted from the levy, and a deduction from the appraised value be made therefor. The plaintiff's levies, as well as ours, were made subject to that right, as appears by the returns ; and if this was not a proper course, the plaintiff's levies are void, and he has no title.

In *Prescott* v. *Trueman,* 4 Mass. 627, it was held that a paramount right is an incumbrance, although it is possible that it may never be enforced as against the grantee of the land, whether it might defeat the title wholly or partially. *Parsons,* C. J., said, " It is a weight on his land which must lessen the value of it."

In *Shearer* v. *Ranger,* 22 Pick. 447, it was decided that an inchoate right of dower is an incumbrance.

In *Jenks* v. *Ward,* 4 Met. 412, it was directly held that an inchoate right of dower in lands set off of the wives of the debtors, was an incumbrance, for which it was proper to make deduction from the appraised value, and that such deduction did not invalidate the levy. *Sturdevant* v. *Sweetser,* 12 Maine 520, is to the same effect.

It is difficult to conceive any reason for these decisions which will not apply with equal or greater force in our favor in the case at bar. In those cases the interest was inchoate and uncertain; in this it is perfected and certain.

The objection to our levy on this head seems to be that the homestead right was waived, both as to the debtor and his wife, by his omission at the time of the levy to avail himself of the statute method of assignment. But the statute (section 1,) provides " that no release or waiver of such exemption shall be valid unless by deed, executed by the husband and wife, with all the formalities required by law for the conveyance of real estate ; or, if the wife be dead, and there be minor children, by such deed, executed by the husband, with the consent of the judge of probate for the county in which the land is, endorsed on said deed." There is in this case no pretence of any release by deed.

It does not follow, because there was no assignment of the exemption according to the statute method, that there can be none at all. The statute provision does not operate to exclude all other modes. That is settled in *Norris* v.

*Moulton.* It is there settled that, though no levy is ever made, the right still exists, and survives to the widow. But, upon the plaintiff's theory, no such right could ever exist in the debtor, his wife, widow or minor child, except upon the double contingency that an execution should be levied upon the homestead, and that the debtor or his wife should elect to have the exemption set off in the statutory method.

There can be no doubt that the legislature intended by this act to do what the explicit terms of the first section declare shall be done. The purpose and policy of the enactment are clear. The court, upon well established general principles, will seek, not to obstruct but to effect-uate this design, and will make operative each and every part of the act, if it be fairly practicable. Dwarris on Statutes 579, 594. The statute gives the right in very broad terms, and where the law gives a right it gives of necessity a way for the enforcement of the right. The principle that when the statute gives a new right, and a remedy, the statute remedy must be pursued, does not apply here. No general or adequate remedy, covering the whole right, is given, nor does the statute assume to do it. As is said of this act by the court in *Norris* v. *Moulton,* "Some of its provisions are of a character to give it a much wider application than its title imports." It gives only the remedy for one particular, and not frequent con-tingency, in case the debtor chooses at that time to avail himself of it. In a large majority of cases there is no levy in the life-time of the owner, and there can be no assignment by the statutory method. In all these cases, if the plaintiff's doctrine be sound, though there be not only widows but minor children surviving and residing upon the homestead, who are incompetent themselves to assert the claim, they would be forever defeated of their right by the debtor's omission.

If partition be not allowed in the manner suggested,

there are other practicable methods of effectuating the object of the statute. The debtor may occupy his share with the creditor, to the extent of his interest, taking such proportion of the rents and profits as five hundred dollars bears to the whole value of the premises. That would be an interest upon which a levy could be made. Revised Statutes, chap. 195, sec. 10.

But even if there was no homestead right existing in the debtor or his wife, and no incumbrance by reason thereof, the deduction from the appraisal on that account would not vitiate the levy. It was at most but an underestimate, made by the appraisers through mistake; a valuation less than they would have made had they been correctly advised as to the homestead exemption, the effect of which error was, as the plaintiff says, that more has passed to the creditor than was estimated for. It was not a levy upon a part instead of the whole estate the debtor had in the land levied upon; not a carving out of a less estate, leaving a reversion in the debtor. All the debtor had in the premises was taken. An error of this kind does not invalidate the proceeding. *Horn* v. *Swett*, 2 N. H. 301, is directly in point, and seems to be decisive of this objection.

The plaintiff has mistaken his remedy. If the land set off was undervalued, and more had passed to the bank than was estimated for in the appraisal, he should have attached and sold the debtor's right to redeem. All his rights would thereby have been secured without impairing ours. Nor was any wrong or hardship imposed on the debtor by the course pursued. He had a year in which to redeem the land, and could have redeemed it if it had been undervalued, or, if that was not convenient, he could have sold his right to redeem. In the case of *Horn* v. *Swett*, it is clear that if by mistake the appraisers had made a deduction for a supposed mortgage, when in fact there was none at all, the result, upon the principle there

settled, must have been the same. If the plaintiff's objection is sustained, the defendants are thrown out of their whole security for their debt, upon a ground merely technical and inequitable.

In *Burnham* v. *Aiken*, 6 N. H. 337–342, the reason for holding that the taking of illegal fees by the sheriff does not avoid an extent, is said to be that for any offence of that kind the sheriff incurs a forfeiture of thirty dollars, and that after the debtor has redeemed the land he may maintain assumpsit for any excess taken by the officer beyond his legal fees; and that, therefore, " there seems to be no necessity which can render it fit or proper to hold the extent void on that account, and leave the innocent creditor to seek redress by an action against the officer."

The illegal charge in that case was taken for the benefit of the officer. In *Odiorne* v. *Mason*, 9 N. H. 24, the illegal charge was made for the benefit of the creditor. The court held that illegal fees did not in any case render an extent void; and gave as a reason, that the taking of illegal fees had become so common in extents, that to hold them void on that account would inevitably produce " great uncertainty as to the validity of titles to real estate resting on extents, and great mischief to creditors and innocent purchasers." All these reasons apply with equal force in favor of sustaining the defendant's levy in the present case. Mistakes in appraising the value of land in extents are necessarily so common, that the holding of levies void on that account would render titles derived through them a most uncertain kind of tenure.

In *Hathaway* v. *Hemingway*, 20 Conn. 191, where the land levied upon was appraised at twenty-five dollars per acre, and was set off by mistake as containing just twenty-six acres, when it contained in fact twenty-six acres and eighteen rods, it was held that the extent was not invalidated, but that the appropriate remedy was by an application in chancery; on which that court might, by a proper

decree, direct the creditor to relinquish so much of the land as would equal in value the excess taken, (cited in U. S. Digest 213, sec. 44.)

There are other authorities in this State to the effect that a misdescription or mistake in reference to the quantity of the debtor's interest in the land set off does not vitiate a levy. An over estimate does not invalidate it. If a greater interest be set off than belongs to the debtor, all the interest he has passes by the extent. *Sturdivant* v. *Frothingham*, 1 Fairfield 100; *Coös Bank* v. *Brooks*, 2 N. H. 148; *Adams* v. *French*, 2 N. H. 389.

It in the case last cited was said, generally, as a consequence of the decision, "that an extent is not void for a misdescription of his (the debtor's) interest." In *Coös Bank* v. *Brooks* the court dissent from certain Massachusetts cases, in which a different doctrine had been indicated, and suggest, as a probable explanation of them, a peculiarity in the statute of that State. The same principle is reaffirmed in *Dunbar* v. *Starkey*, 19 N. H. 160; *Hovey* v. *Bartlett*, 34 N. H. 378. The same thing is said in *McConihe* v. *Sawyer*, 12 N. H. 396.

The decisions in *Barnard* v. *Fisher*, 7 Mass. 71; *Root* v. *Colton*, 1 Met. 345, and *McGregor* v. *Williams*, 10 Cushing 526, seem to be based upon peculiarities in the Massachusetts statutes, so as not to be authority here. *Vide* Mass. Rev. Statutes, chap. 73, secs. 8, 31.

So far as they conflict with our position, they are overruled by *Horn* v. *Swett*, 2 N. H. 301, and other cases already cited. The objection to the levy because of the supposed under-appraisal, is founded upon a misconception of the policy and object of extents upon real estate. They contemplate, not so much the acquisition of the land for the creditor, as the constraining the debtor to pay the debt in money, by redeeming the land, which the creditor generally prefers. The statute since 1829 requires, for the redemption of the land set off, payment not of the full

amount of the debt mentioned in the execution, but only the sum at which the land was appraised, with costs and charges of levy. The law in all cases favors, not the divesting citizens permanently of their landed inheritance, but does favor their right to redeem their lands, as well as the duty of paying their just debts. So at common law, where levies of executions upon lands were unknown, estates in land by statute merchant, statute staple and elegit, were held not in fee but only for security, as chattel interests, until the debt should be satisfied by the rents and profits, after which possession of the land reverted to the owner of the fee. The payment of the debt in personality, and the redemption of the land, are the results primarily and always contemplated.

In *Porter* v. *Bean*, 1 N. H. 362, one of the reasons given for deciding that an attorney was a competent appraiser of lands to satisfy a judgment in an action he had conducted, was, that the appraisal did not conclude the debtor with regard to the value of the land, and that, if dissatisfied with the appraisal, he could redeem within a year. See, also, to this point, *Burnham* v. *Aiken*, 6 N. H. 306–325, before cited.

This is different from the case where the land is set off for more than the sum due on the execution. There the debtor is compelled to pay more than his debt in order to redeem his land, and the only remedy seems to be to invalidate the levy. Here there can be no such result.

In *Boyd* v. *Page*, 17 Shep. (14 Maine,) it was held that where land is set off in satisfaction of an execution which has been appraised at more than the amount of the execution, the fees of the officer, and the expenses of the levy, the extent is void. In *Pickett* v. *Breckenridge*, 22 Pick. 297, land appraised at $50.83 was set off in satisfaction of an execution amounting to only $47.83, and the levy was held invalid, "more being taken (as the court said) than the sheriff had any right to take." The reason of this deci-

sion is said, in *Holman* v. *Hall*, 4 Met. 419, to have been that because the value of the land exceeded by three dollars the whole amount of the execution, costs, and charges of levy, there was no other remedy.

The court in *Pickett* v. *Breckenridge* said that the validity of the title depended on the return of the officer as it stood, and that must be taken to be true; but that if, as had been suggested, the mistake had occurred in estimating the amount of the incumbrance, the officer's return might be amended, and the mistake corrected. In our case the judgment was for $15,691.46, debt, and $18.85 costs, besides interest and charges of levy, while the whole of the appraised value of the land, without the incumbrance, was $13,690. No more has been taken, upon any view of the case, than the officer had a right to take, nor so much. If a mistake in estimating the incumbrance has been made, there are other modes of redress, more equitable and more direct than by invalidating the defendant's levy, taking from him his security, and throwing him out of his debt. The land might have been redeemed, or the right of redemption sold, or the return might be now amended, so as to allow a larger sum towards satisfaction of the judgment. The error, according to the plaintiff, is not that we took too much land, but that we did not endorse enough upon the execution. That mistake, if it has been made, can still be corrected. The balance of the judgment, after the application of $13,690, is still wholly unsatisfied. It seems to be a case much weaker against the extent than where illegal fees have been included in the levy. That error, it is well settled, does not vitiate a levy. *Burnham* v. *Aiken*, 6 N. H. 306; *Odiorne* v. *Mason*, 9 N. H. 30; *Holmes* v. *Hall*, 4 Met. 419; *French* v. *Eaton*, 15 N. H. 337.

We have considered this case in the argument without reference to the question of the admissibility of the plaintiff's evidence to impeach our extent. That was inadmissible. It was objected to at the trial. The return is a

Fletcher *v.* The State Capital Bank.

part of the record.  It is conclusive upon the parties and their privies, and cannot be impeached in the way nor for the purpose here proposed.  It recites that the premises were set off at their true value.  This recital is by law a proper matter of return.  It cannot be contradicted by evidence *aliunde.*  There is no pretence of any fraudulent intent.  *Dudley* v. *Butler*, 10 N. H. 281.  The rule on this point is laid down in *Howard* v. *Daniels*, 2 N. H. 137, a case which bears directly on all the principal questions here raised.  The court say in that case :

" Extents, when returned, become records, and they are not to be impeached by parol evidence by a party, except in a *scire facias* for a new execution under our statute, or in an action against the sheriff for falsehood in his return ; and by third persons only when they have been defrauded by the extent, or claim title to the premises not under either party to the extent."

This case seems to anticipate both the decision and the reasoning in *Horn* v. *Swett,* 2 N. H. 301, already cited. In our case the supposed inadequacy was only about one thirty-third part of the whole appraised value of the estate set off.

The deduction for roads does not avoid the levy.  It is a reservation, not of the soil but of the easement or right of the public in the roads — which is an incumbrance.  It imports that an allowance was made therefor in the appraisal.  *Leavitt* v. *Towle,* 8 N. H. 96.

There is no uncertainty as to its effect.  The plaintiff says the land all passed by the extent.  But if the soil was in fact deducted from the appraisal, and not set off, it did not pass by the extent, and was reserved to the debtor ; for the extent passes only what is valued and set off by the appraisers.  That would not vitiate the levy, nor constitute an irregularity.

*C. R. Morrison,* for the plaintiff.

1. By direction of the creditor the land was appraised, subject to the homestead exemption, and $500 was deducted on that account. We submit that the evidence shows that the appraisers were instructed to call this incumbrance $500 ; but this is not material. It is undisputed that they were directed to make a deduction, more or less, on account of the incumbrance. If in law and in fact no deduction should have been made, it seems to be quite clear, upon principle and authority, that the levy was void. *Barnard* v. *Fisher*, 7 Mass. 71 ; *Root* v. *Colton*, 1 Met. 345 ; *Kelley* v. *Burnham*, 9 N. H. 20 ; *Dunbar* v. *Starkey*, 19 N. H. 160.

2. Should any deduction have been made for the homestead ? This must depend upon the act of 1851. Comp. Stat. 474. The first section provides that " The family homestead of the head of each family shall be exempt from attachment and levy or sale on any execution, on any judgment rendered on any cause of action, accruing since the first day of January, A. D., 1852 : *Provided,* such homestead shall not exceed in value five hundred dollars. Such homesteads shall not be assets in the hands of an administrator for the payment of debts, nor subject to the laws of distribution and devise, so long as the widow or minor children, or any or either of them, shall occupy the same."

The last clause can only apply to a homestead which the husband or father has at his decease, and which but for this clause would be assets. The language is not that such homestead may be occupied by the widow or minor children as long as they see fit, but that it shall not be assets, &c., so long as they do occupy it. The exemption is simply from the operation of the ordinary laws for the settlement of the estates of deceased persons, and nothing more ; and this clause can in no way affect the construction of the first clause.

By the first clause the family homestead is exempted,

&c. : *Provided,* " it shall not exceed in value five hundred dollars." If this clause stood alone there would seem to be no exemption when the family homestead is of greater value than the sum specified, and when of that or a less value the exemption would be absolute. Upon such a construction of course no deduction could be made on account of the homestead; for, when protected at all, the exemption would be absolute, and no levy in any form could be made upon it, and when not protected it would be liable to all creditors, as if the law had not been passed. The defendants, therefore, could not find any support from this section, even if it stood alone.

The construction, however, must be upon the whole act; and upon examination it will be found that the exemption which is declared (but not accurately express-ed,) in general terms, in the first clause of the first section, is made operative in the modes and to the extent, and only to the extent provided in the third and fourth sections.

" Sec. 3. The sheriff executing any writ of execution founded on any judgment, such as is mentioned in the first section of this chapter, on application of the debtor or his wife — if such debtor shall have a family — and if the land and tenements about to be levied on, or any part thereof, shall be the homestead or estate thereof, shall cause a homestead, such as the debtor may select, not exceeding five hundred dollars in value, to be set off to the debtor in the manner following, to wit : he shall cause three appraisers to be appointed, one by the creditor, one by the debtor, and one by himself, who shall be discreet and disinterested men, resident in the county, and shall be sworn by a justice of the peace impartially to appraise and set off by metes and bounds a homestead of the estate of the debtor, such as he may select, not exceeding five hundred dollars in value ;" and the set-off and appraisement so made shall be returned by the sheriff, along with the

writ, for record in court; and if no complaint shall be made by either party, no further proceeding shall be had against the homestead; but the remainder of the debtor's lands or tenements, if any he have, shall be liable to levy or sale on execution."

The fourth section provides in effect that when the homestead shall consist of a house, or a house and lot of land, of greater value than $500, and which cannot be divided without injury and inconvenience, the debtor may retain the whole by paying to the creditor the excess, and in default thereof the whole may be sold and the excess retained by the creditor.

These are all the provisions of the statute that we conceive have any bearing upon the question, except the fifth section, which relates to certain debts which are not to be affected by the act. The sheriff acts upon application of the debtor or his wife. Her rights as well as his are thus secured, and those of the children through them. A homestead is to be set off by metes and bounds, and returned to the court. It is to be such as the debtor may select. If his old homestead is not worth more than $500, the whole of it may be set off to him. If it exceeds that value he may have a new homestead carved out of the old one. But he is not, as we understand the law, necessarily confined to his old home. The homestead is to be such as he may select; and the only restriction upon him in this particular is that it shall be " of the estate of the debtor" about to be levied on. And there is good reason why such should be the law; for, in his reduced circumstances, the debtor who can have but $500 may find it for his interest and comfort to take it in some small tenement, or place which had never constituted any part of his homestead in his better days.

The homestead, therefore, that is exempted is not an unascertained, floating interest, somewhere in the home place, but it is that which has been selected by the debtor,

and set off by the appraisers by metes and bounds for a homestead.

In this case the debtor had an opportunity to select a homestead, but did not choose to do it, and so the creditor made a deduction. It is a decisive objection to this, that the statute makes no provision for a deduction, but gives another and entirely different remedy. The statute creates the exemption as a new right, and gives the means of enforcing it; and upon a well settled rule of law the statutory mode must be followed. 1 N. H. 21; *Almy v. Harris*, 5 Johns. 175; 14 Mass. 70; *Boston* v. *Shaw*, 1 Met. 130; Salk. 460; Cro. James 644; 2 Burr. 803; 3 Mass. 307; 5 Mass. 514; 11 Mass. 364; 14 N. H. 547. This rule has been applied in several cases arising under the Pennsylvania homestead act. 14 U. S. D. 228, sec. 29; do. 319, sec. 55; 15 do. 263, secs. 75, 83; 16 do. 295, secs. 38, 39; and it would be wholly decisive of this case, as we suppose, even if we could not discover any reason why a deduction might not have been an equally feasible remedy, if the legislature had thought proper to prescribe it.

But there are difficulties in the way of a deduction, of a character to show why it was not deemed admissible. The interest itself would be too contingent and uncertain for any safe calculation of the amount of the incumbrance. Of course it could not become available until set off from the rest of the estate; and if this is not done at the time of the levy, when will it be done, and when will the incumbrance really commence, if ever, and how long will it last? All this is dependent upon the future action of the debtor and his wife and children, and how many of those, or when to be born, or to die, no one can conjecture. The common law rejected remainders upon a double contingency, as being too remote. It would be difficult to tell how many double contingencies must be calculated in determining the present value of the land, if a deduction

is to be made upon the ground that perhaps the debtor, or else his wife, or else some child, then born, or which may afterwards be born, will, in some unknown future and for some unknown length of time, claim and occupy a homestead in the land set off upon the execution.

It may be urged that a deduction may be made for dower, and this appears to be the weight of authority. *Jenks* v. *Ward and Others*, 4 Met. 404 ; *Sturdivant* v. *Sweetser and Another*, 3 Fair. 520.

But the inchoate right of dower, although it may never be enforced, is not subject to as many contingencies as the homestead right would be ; and, what is more important, it is not practicable to set out dower in the life-time of the husband, and therefore a deduction must be allowed for it, or the creditor will suffer loss.

But further : Suppose several levies upon different parts of the same parcel, which creditor, or how many of them, shall make a deduction for a homestead. If the deduction is in A.'s levy, the debtor may prefer to have a homestead from the part taken by B., or *vice versa*.

In the case before the court it so happens that the defendants extended their execution upon the whole of the home farm and mansion house. But it has been shown that the debtor in selecting a home is not restricted to the old one. What shall hinder Mr. Latham, if he should return from the West, from hereafter asserting his right in some other part of his estate than that taken by the defendants ?

Finally, by the express language of the act, certain creditors are not to be affected by it. How are their rights to be secured, if a deduction is allowed instead of a set-off? One of our executions was for a debt contracted prior to the first day of January, 1852, and is therefore expressly saved from the operation of the act. If a homestead had been applied for and set off, we could have levied upon it. Or, if no deduction had been made there would have been

$500 of property left for us. But, if the defendants' proceedings are sustained, the plaintiff has been prevented from satisfying his execution out of property which was confessedly subject to it, and which has not been appropriated by any other creditor, and rights are destroyed which the statute expressly declares shall not be in any way impaired.

We maintain, therefore, that there is no incumbrance under the act against an execution, except at the option of the debtor or his wife, and that if no application is made to the sheriff to set off a homestead, the creditor takes the land disencumbered, and that consequently the defendants' levy is void.

The proposed amendment, to show that the tracts were severally appraised, need not be considered in this case, since, if made, it could not affect the plaintiff's levies, which were confined to the homestead parcel; and there are other persons who would wish to be heard upon such an application.

But the inquiry cannot be gone into, for the reason that there is nothing upon the return to indicate that there was a separate appraisal. *Whittier* v. *Varney*, before cited.

3. The reservation for roads is void for uncertainty, and the land all passes by the extent. The appraisers have deducted from the appraisal land which passed by the extent.

The return is that they have set off all within the bounds except three and three-quarters acres, and the appraisal is of this extent.

SAWYER, J. The parties in this case are respectively judgment creditors of Beza Latham, and they claim to hold the same land of their debtor by virtue of the extent of their several executions upon it.

The defendants' extent has priority in point of time—the

date of their levy being March 22, 1855, and that of the plaintiff March 15, 1856. They, consequently, have the better title, if their levy can be sustained. They are, however, equally entitled to judgment if the plaintiff's levy is bad as if their's is good. The plaintiff can have judgment only in the event that both branches of the case are found in his favor; namely, that the defendants' levy is bad and his good.

Several exceptions have been taken to each. It is proposed to consider those which have been urged against the defendants.

In the description of the three parcels embraced in the defendants' levy, the number of acres in each is stated, and from the whole area is deducted the quantity of land covered by highways. It is objected that this deduction vitiates the levy. The ground taken is that by it the appraisers intended to make a reservation of the land covered by the highways; that this land was not appraised, and that this reservation, being void for uncertainty, it thus results that the land covered by the highways, being within the limits described, passes by the extent if held to be valid, and nothing is allowed to the debtor for this land towards the satisfaction of the judgment.

This objection is founded upon a misconception of the object and effect of the deduction. It is not a reservation of the land, but merely a statement of the fact that the premises are encumbered with public easements consisting of the highways upon them, and of the deduction proper to be made in setting forth the number of acres which they contain, available for useful purposes. The quantity of land need not have been stated; but, if stated, there is no objection to setting it out in this mode; by deducting the quantity occupied by the highways from the whole number of acres included in the premises described.

It appears from the case that there is a highway upon one of the parcels, and it does not appear that there are

not highways on each of the others.	The fact might not be material, if it had appeared.	The appraisal is made not by the acre but in gross, and it must be understood that the appraisers estimated the entire tracts at their just value with these encumbrances upon them, by which the quantity of land within the boundaries described is diminished, for all practical purposes, by about four acres, and that this is all that is to be understood from the certificate of the appraisers in reference to the highways and the deduction on account of them.

Another, and the principal objection to this levy is, that it is made subject to the homestead exemption,—the certificate of the appraisers setting forth that the three tracts are " of the value of $13,690, and no more, subject to the widow's dower and the homestead exemption." It is objected that the levy is void because neither the debtor nor his wife, though occupying the premises as their family home at the time of the levy, made application to the officer levying the execution to set off the statute homestead, and therefore no homestead exemption existed to which the extent could be subject. The argument is, that the statute of July 4, 1851, commonly called the homestead exemption act, makes no provision for deducting the value of the debtor's statute homestead from the appraised value of the entire estate upon the levy of an execution upon it; but gives a remedy only by way of setting off the homestead on application of the debtor or his wife; that the exemption is a new right given by statute ; that a way for enforcing it is therein provided, and that this statute mode is to be followed, to the exclusion of all others. The result of this view is, that the statute gives the homestead exemption, as a right in the debtor, only in cases where an execution is about to be levied on the estate of the head of a family, occupied as his family home, and he and his wife make application to the officer levying to have the homestead set off in the manner provided in the act. Upon

this view the statute is to have precisely the same opera-
tion and effect, in reference to the right of the debtor to
the exemption, as if it had merely declared that a home-
stead exemption should subsist when the dwelling of the
debtor was about to be levied upon, provided he or his
wife should apply to have it set off at the time of the levy,
and the homestead so set off should not be subject to
attachment and levy or sale on execution, and should not
be assets, &c. This view is founded upon a misconception
of the purposes and scope of the enactment. It narrows
down the objects of the statute from that of creating the
homestead right for the use of every head of a family, for
the benefit of himself and his wife and minor children, to
that of setting up a homestead exemption for the benefit
of an execution debtor during his life, and his wife and
minor children after his decease. In the case of *Norris* v.
*Moulton,* 34 N. H. 392, it was decided by this court that
the statute has operation and effect much beyond this.
The provision in the first section, establishing the exemp-
tion, is expressed in the broadest terms, as applying to the
family home of every head of a family. These terms
could not, with any degree of propriety, have been adopted
unless the object of the act had been to create a right in
every family dwelling which was to be the subject of the
exemption. If the purpose had been to establish the ex-
emption only in the comparatively few cases where the
family home was about to be levied upon, it is inconceiva-
ble that such broad and comprehensive language should
have been employed, embracing the family home of every
head of a family, instead of limiting it to the family home
of every debtor about to be levied upon.

Nor can it be conceived that it was the purpose of the
legislature in the enactment to give the statute homestead
to the widows and minor children of execution debtors,
merely because the husband and father, in his life-time,
had — fortunately for them — been an execution debtor,

and his domicil had been about to be levied upon, and at the same time to leave the widows and minor children of all others without the benefits of the act. It is too clear to admit of doubt that the policy and aim of the act were not intended to be of this narrow and restricted character. It has a more liberal and consistent purpose, in securing to all alike the benefits of the homestead, which it creates as a right in the head of every family during his life, and in his wife and minor children at his decease, whether he may or may not have been a judgment debtor; and while it establishes the right in the head of each family, for the benefit of himself during life, and his wife and minor children at his decease, under the limitations which it prescribes, it provides no mode in which the right may be enforced and enjoyed, except in the case of an execution about to be levied upon the estate; and this is to be resorted to only at the option of the debtor or his wife. It is to be set off in such case upon their application therefor.

It is a general rule of law that when a statute confers a new right, and prescribes the mode of enforcing it, the statute remedy is to be pursued to the exclusion of all others. But the rule is not of universal application. It applies only where the remedy given is coextensive with the right, and where, from the character and provisions of the act, and the nature of the right and remedy, it is to be understood that the remedy was designed to be exclusive. The rule consequently is to be taken subject to various qualifications and exceptions.

In penal statutes, which are to be construed strictly, and which are not to be extended in their scope and operation beyond what is expressed, the right conferred growing out of a new prohibition of the statute, or arising upon a new offence created by it, is to be enforced only in the mode which the statute prescribes. Several of the cases cited in the argument by the plaintiff's counsel are of this character. Such are *Castle's Case*, Cro. Jam. 644, in which it

was held that an indictment would not lie against one for taking upon him to be a justice of the peace when not qualified, as the statute appointed a penalty to be recovered by bill, plaint or information, and before the statute it was no offence. *Regina* v. *Wigg*, Salk. 460; *Rex* v. *Robinson*, 2 Burr. 799; *Smith* v. *Drew*, 5 Mass. 514. In this case of *Smith* v. *Drew* the plaintiff brought an action of debt upon the judgment for the treble value of the plaintiff's goods stolen by the defendant. The statute under which the judgment was rendered provided that if the offender should be unable to pay the treble value, he might be farther sentenced to make satisfaction by service to the owner, who was empowered to dispose of him in service for such time as the court might order; but farther provided, that unless the owner should sell him in service within thirty days, the goaler might set him at liberty. *Parsons*, C. J., says, "when a statute creates a new right, without prescribing a remedy, the common law will furnish an adequate remedy to give effect to the statute right. But when a statute has created a new right, and has also prescribed a remedy for the enjoyment of the right, he who claims the right must pursue the statute remedy. The treble damages were awarded as part of the defendants' punishment. The right of the owner is an incidental part of the sentence, which must be executed agreeably to the provisions of the statute, and not in any other way."

The decision in *Almy* v. *Harris*, 5 Johns. 175, is to be referred to the same principle. There Harris, being licensed to keep a ferry under a statute which punished the keeping a ferry without a license, brought his action on the case against Almy for interfering with his ferry; and it was decided that the only remedy for such interference was by enforcing the penalty. These, and numerous analogous cases in which the general doctrine is asserted, are cases in which the new right grows out of a penal statute, and the rule which governs in the construc-

Fletcher *v.* The State Capital Bank.

tion of such statutes requires that nothing shall be taken by intendment, in reference to the rights and remedies which they give beyond what is expressly declared.

So, too, where a statute confers a new power, the exercise of which, but for the statute, would be a violation of private rights, and at the same time provides the means of executing the power, and a remedy for the interference with private rights in its execution, those who claim the power can exercise it in no other way, and those who seek a remedy for its rightful execution to their damage, can have no other redress than such as is prescribed by the statute.

Several of the other cases cited by the plaintiff's counsel fall into this class. Such is *Gedney* v. *Tewksbury*, 3 Mass. 307, which was debt to recover the damages awarded to the plaintiff for land taken for a highway. The statute provided that the Court of Sessions should order payment of the damages out of the town treasury; and, in default of payment within a reasonable time, might levy the amount by warrant of distress upon the property of the inhabitants. It was held that the statute remedy must be followed. So, too, in *Boston* v. *Shaw*, 1 Met. 130, the same principle was applied. That was assumpsit, to recover the amount of assessments made against the defendant under an ordinance of the city of Boston for contribution toward the expense of a common sewer with which the defendant's drain connected. The ordinance authorized the assessment of a tax against the individuals whose drains connected with the sewer, for the collection of their proportionate shares of the expense, and provided for the collection of the tax in the ordinary way; and it was held that this was the only mode of enforcing its payment. Of the same character is the power conferred upon corporate bodies by their acts of incorporation, to assess the shares of the members, and to enforce the assessment in a specific manner. *Turnpike* v. *Gould*, 6 Mass. 44; *Turnpike* v.

*Adams,* 8 Mass. 138; *Glass Co.* v. *White,* 14 Mass. 286; *Bangor House* v. *Hinckley,* 12 Me. 385. In all such cases if no provisions exist in the statute to indicate that the remedy is intended as cumulative, it is held to be exclusive, because in all such cases the powers, rights and remedies given are matters *stricti juris.* But in all cases of the grant of such power, if it is to be gathered from the provisions of the statute that the means prescribed for executing it, or the remedy given as a redress for the injury which its execution occasions to the rights of others, are not intended to be exclusive, but cumulative, then the rule does not apply. Thus in *Chesley* v. *Smith,* 1 N. H. 20, which was assumpsit by a farmer and renter of a toll-gate, under a turnpike corporation, for tolls incurred by the defendant in passing the gate without payment, when it was erroneously supposed that he was entitled to pass toll-free, the act of incorporation, giving authority to detain the traveler until the toll was paid, it was contended that this statute remedy for enforcing the toll excluded all others. The court admitted the general doctrine, but held that it was subject to the qualification, that, where the remedy is given by statute, in order that the right may be more effectually, or more conveniently, or expeditiously enforced, the provision giving the remedy being intended for the benefit of the party to whom it is granted, is, unless other remedies are expressly excluded, to be construed favorably, and considered cumulative rather than restrictive, and on this ground the action was maintained.

The ground upon which that case was held to be an exception to the general doctrine, equally exists in this. The remedy given by the statute of a set-off of the homestead by appraisers appointed on application to the officer levying the execution, is intended for the benefit of the debtor, that he may have a more convenient and expeditious method for having his homestead interest assigned to him in severalty, when the estate in which his homestead right

subsists is about to be taken on execution, than the more tardy and complicated proceedings of a petition for partition.

But upon another view, a homestead exemption existed in this case to which the levy could be made subject, even if the statute provision is to be considered as restrictive, and excluding other remedies; for it can be held to be thus exclusive only in the particular case for which the statute remedy is given; that is, for setting off the debtor's homestead as an estate or interest to be held in his right, when an execution is levied. The right to be so set off is his homestead, to be exempted from attachment and levy, or sale on execution against him, the head of the family, as the judgment debtor; and if set off on the application of the wife, it is to be for his and her benefit in his right, and during his life. At his death the statute gives the homestead, whether so set off or not, to her, and to the minor children in her and their own right; and to these rights of theirs, accruing at his death, the statute remedy does not extend. It is limited to the setting off of his homestead as an estate or interest, to be held in his right during his life. That the statute gives such right to the wife, as a contingent inchoate interest during the life of the husband, without an assignment to him in the statute mode, was one of the points held in *Norris* v. *Moulton.* The statute remedy, then, is not coextensive with the rights which it creates. In such case the construction of the provisions conferring the right is not necessarily to be narrowed down to the case for which the remedy is provided. In a case of doubt as to the intention of the act in reference to the extent of the right which it creates, a consideration of the nature and extent of the remedy provided may aid in giving the proper construction to the statute, as to its meaning in reference to the extent of the right. But where, as in this case, from the whole drift and policy of the enactment, independent of the provision

giving the remedy, it is obvious that the right is established in cases which the remedy provided by the statute does not reach, the remedy at most is to be held exclusive only in that case to which it applies, and, in those cases which it does not reach, such remedy is to be applied as, upon principles recognized in analogous cases, may be adapted to the nature of the case. If it be conceded, then, that the debtor's homestead exemption is lost during his life, because not set out in the statute mode, which excludes all others for setting out that right, still the contingent interest of the wife remains, accruing to her in her own right upon the death of her husband, in the same manner as her contingent right of dower, and the levy might properly be made, as it was subject to both these contingent rights.

An argument against this position is drawn from the difficulty which must necessarily arise in estimating the value of the wife's inchoate interest, in making the deduction, as depending upon too many contingencies, and being too uncertain to admit of a just calculation of the amount of the incumbrance. But this difficulty is no greater in estimating the amount of the incumbrance from her homestead right, than from her inchoate right of dower. They depend upon the same contingencies, and are incumbrances of the same nature, constituting a "weight" upon the land, which lessens its value, and consequently proper to be made the ground for an abatement of the price at which it is to be taken by the creditor. That the possibility of dower is an incumbrance, lien, or weight upon the land, affecting its value, is clear. Whether it is such an incumbrance as to constitute a breach of the covenant against incumbrances in a conveyance of the land, has been doubted. *Powell* v. *Morrison & Brimfield Co.*, 3 Mason 355; *Fuller* v. *Wright*, 18 Pick. 405; *Marston* v. *Hobbs*, 2 Mass. 433; *Nyces' Ex'rs* v. *Obertz*, 17 Ohio 71.

By the decision in *Shearer* v. *Ranger*, 22 Pick. 447, it would seem to be now the settled law of Massachusetts that the possibility of dower is an incumbrance within the covenant, it being unqualifiedly held in that case that an inchoate contingent right of dower was an existing incumbrance, amounting to a breach of the covenant, which it is said by the court "extends to all adverse claims and liens upon the estate, whereby the same may be defeated in whole or in part, whether the claims or liens be uncertain and contingent or otherwise." In *Jenks* v. *Weld & als.*, 4 Met. 404, it was decided that it was such an incumbrance as warranted the appraisers in setting off the land on execution, to make a deduction from the appraised value of the land equal to the estimated value of the contingent right. The same point was decided in *Sturtevant* v. *Sweetser*, 12 Me. 520. It is held, too, that the existence of the contingent right exonerates a party who has contracted to purchase the land from the payment of damages at law for refusing to perform the contract until the right was extinguished. *Porter* v. *Noyes*, 2 Me. 22; *Jones* v. *Gardner*, 10 Johns. 266. And it is sufficient ground in equity for the court to deny a decree for the specific performance of the contract. *Fuller* v. *Wright*, 18 Pick. 405; *Greenwood* v. *Ligon*, 10 Smedes and Marshall 615. It is a proposition too clear for argument, that a lien or burthen upon land, like the inchoate right of dower, the existence of which would seem to constitute an incumbrance amounting to a breach of the covenant against incumbrances, which furnishes legal ground of excuse for the non-performance of a contract to purchase, and equitable ground for a denial of the court to interfere for compelling specific performance, and which, though depending upon contingencies that may prevent it from ripening into an estate or vested interest, may, nevertheless, become at any moment an estate for life in one third of the land, is a lien or incumbrance of such character as to warrant the appraisers in

making an abatement on account of it from their estimate of the value of the land. In estimating the amount of the deduction to be made, they must necessarily proceed upon all the uncertainties incident to a calculation of the chances as to the death of the husband and the survivorship of the wife. The homestead given by the statute to the wife at the death of the husband, when it has not been set off to the husband in his life-time in the statute mode, is in this particular precisely of the character of her claim to dower, and the same elements for computing the value of the contingent interest exist in the two cases.

Again, it is said that in the case of several levies upon different parts of the same premises, constituting the debtor's family home, and of such value that his limited statute homestead may be taken from either part, it cannot be known at the time of the levies from which part the statute homestead will ultimately be taken. The deduction of the full value of the homestead must consequently be made in the case of each levy. The same embarrassment exists in the case of several levies upon different parts of premises which are subject to the inchoate right of dower. In both cases the appraisers are to make such abatement as the exercise of sound judgment requires, in view of all the circumstances, including that of the greater or less degree of probability that the dower in the one case, and the homestead in the other, will be assigned in whole or in part out of the particular estate upon which levy is made.

It is further objected, that, by the deduction of the value of the homestead right, that amount of the property of the debtor is placed beyond the reach of those creditors specified in section five of the homestead act, whose claims, by the express provisions of that section, are excepted from the operation of the exemption, and that the exception to this extent is thereby nullified. The objection is urged as an argument against the construction given to the statute,

Fletcher v. The State Capital Bank.

that it sets up the homestead exemption right in other
cases than when an execution is about to be levied, and
application is made to have the homestead set off in the
statute mode.   If the result suggested follows from the
deduction of the value of the contingent right, namely,
that this amount of the property of the debtor is thereby
locked up against the claims of those creditors who by
section five are excepted from the operation of the exemp-
tion, still this affords no ground for holding, in disregard
of the other plain provisions of the act, that the legislature
did not intend to set up the right in other cases than
those in which the statute mode of assigning it may be
applied.   This section declares only that the provisions of
the act—that is, the provisions which exempt the statute
homestead from attachment and levy, or sale on execution,
and from administration as assets—shall not extend to
judgments rendered on contracts made before the first
day of January, 1852, nor to certain other specified claims.
The effect and operation of this section are merely to
authorize the creditors whose claims are of the character
there specified, to proceed in enforcing their claims upon
the property or estate of the debtor without regard to the
homestead.   It does not, however, declare that they shall
have priority over other creditors whose claims are not thus
excepted, and who have acquired earlier liens.   If, then,
in enforcing the earlier lien the deduction is proper to be
made, because the estate is necessarily taken with the
weight of the homestead right upon it ; and if, thereby,
the value of the right is placed beyond the reach of
other creditors, in the levy of whose executions it might
have been taken free from the incumbrance, this result
follows only because it is necessarily incident to the
proceedings.   It may, perhaps, admit of question whether
the result follows as suggested.   It may be that, by a sale
of the debtor's right to redeem, upon an execution
founded on such excepted claim, the homestead right is to

be held extinguished, as against those claiming under such sale. Upon this view, the right of redemption would become available to creditors of the class specified in section five, beyond its value to other creditors by the exact amount of the deduction. If, however, no practicable mode exists for reaching the value of the homestead right in such case, for the benefit of creditors of the former class, without further legislation, still it is not a consideration of that controlling character to require that the whole policy of the act, as gathered from its other provisions, should be abandoned because of it.

In every aspect in which the question has been presented by the able arguments of the counsel, we think a homestead exemption existed, to which the levy was properly made subject. The further questions then arise, whether the inquiry is open to parol evidence that the appraisers made too high an estimate of the value of the homestead right, and if so, whether such over estimate avoids the levy.

In *Howard* v. *Daniels*, 2 N. H. 137, the demandant claimed under the extent of an execution against the grantor of the tenant, and evidence was offered to show that the land set off was worth from five to seven hundred dollars more than the amount of the judgment. The evidence was insufficient to show fraud in the levy, and it was decided that it was inadmissible to impeach the extent on any other ground. It is there said that extents become records when returned, and they cannot be impeached by parol evidence offered by one who is a party to them, or who claims under a party to them, unless offered in a *scire facias* for a new execution under the statute, or in a suit against the officer for a false return. The title to real estate under an extent is a title by record. As such, it is to be acquired and proved by the record alone. *Sullivan* v. *McKeen*, 1 N. H. 371; *Whiting* v. *Bradley*, 2 N. H. 83; *Fulwood's Case*, 4 Co. 67, a; *Hoe's Case*, 5 Co. 90; *Gooch & al.* v. *Atkins*, 14 Mass. 378. The return

of the officer, and the certificate of the appraisers, embodied in it or accompanying it, and thus constituting an essential part of the return, which makes the record title, so far as it sets forth their acts and proceedings required by law in making the extent, must be held to be conclusive when set up by one claiming title under the extent. The case falls within the general doctrine in relation to the returns of officers upon process, that as to the parties and those claiming as privies, and all others whose rights and liabilities are dependent upon the proceedings, the return of matters material to be returned is so far conclusive that it cannot be contradicted for the purpose of invalidating the proceedings, or defeating any right acquired under them. *Angier* v. *Ash & al.*, 26 N. H. (6 Foster) 99, and numerous cases from our own Reports, there cited. And the principle, in its application to the return of an extent, derives a double support from the record nature of the title acquired, and the infinite mischief that must result from holding that as such record title of real estate, it is open to the uncertainties of parol proof, in reference to the acts and doings of those whose proceedings are essential to its validity. The proposition here is to show by parol that the appraisers erred in their judgment as to the value of the contingent homestead interest, the amount of which it was necessary for them to estimate in order to form a just conclusion as to the value of the estate set off. The amount of that interest was necessarily one of the elements upon which their calculation of the value of the estate was based. Upon that question, in the absence of any proof of fraud, their judgment is conclusive.

But if the question were open to parol upon the law as held in this State, their over-estimate of the value of the homestead right, and their consequent deduction of too large a sum from their estimated value of the estate, free from the homestead, would not vitiate the levy. The effect of this over-estimate is to set off the land at a

lower appraisal than would otherwise have been given to it. In Massachusetts, in the case of *McGregor* v. *Williams & al.*, 10 Cush. 526, it was held that a mistake of the appraisers in deducting more than the amount due on a mortagage as an existing incumbrance, was fatal to the levy. The levy was made under their Revised Statutes, chap. 73, sec. 31, which directs that in levying executions upon mortgaged estates, by setting off the land on appraisal, the appraisers shall deduct the value of the incumbrance, or the amount of the mortgage debt, when known, from the estimated value of the premises. It was at the option of the creditor to proceed in the levy under this statute, or in the modes recognized in this State, by a sale of the equity, or by an extent upon the estate as unincumbered, regardless of the mortgage. Adopting the former course, it was held that he must proceed at his peril, as the statute gives the appraisers no discretion, but requires them to deduct the amount of the mortgage debt.

This case, then, upon a view of the precise points of the decision, has no application to the question here. The reasoning of the court, however, in this as well as in the cases of *Root & als.* v. *Colton*, 1 Met. 347 ; in *Whitehead* v. *Mallory*, 4 Cush. 138, and in *Barnard* v. *Fisher*, 7 Mass. 71, would seem to sustain the general doctrine, independent of the statute, that an over-estimate of an incumbrance, and the consequent deduction of too large a sum on account of it, will vitiate the levy. All the cases in which this reasoning is applied are widely distinguishable from this. Thus in *Barnard* v. *Fisher*, the deduction was made on account of a prior attachment in a suit pending. It was held that this was no incumbrance for which a deduction should be made. The court say : " amidst all the uncertainties," as to whether such lien by attachment would ever become a title by extent, " to value an attachment in an undetermined suit as an incumbrance upon the land, would be palpably absurd." In *Root & als.* v. *Colton*

the appraisal was made subject to a life-estate which had been extinguished. In *Whithead* v. *Mallory* the deduction was made on account of the possibility of dower, when in fact there was no possible right of dower, because the husband was never seized during coverture. In all these cases the levy was held void, because a deduction was made for an incumbrance when none in fact existed. In *McGregor* v. *Williams & al.*, the incumbrance indeed existed, but the levy was held void, because a greater sum was deducted than the mortgage debt, when the statute expressly required the amount due upon the mortgage to be deducted. In none of these cases, and indeed in no case which has fallen under my notice, is the doctrine maintained upon general principles, independent of statutory provisions, that where the value of the incumbrance is to be ascertained, not by computation alone, as in the case of a mortgage debt, but, as in this case, by the exercise of judgment, and in relation to a matter about which the opinions of men may be expected materially to differ, the levy can be vacated because of error in the judgment of the appraisers from an over-estimate of the value of the incumbrance. The views expressed by the court in the Massachusetts decisions referred to, may be considered as leading to this conclusion. They proceed upon the general ground that the effect of an over-estimate is to give to the creditor more of the land of his debtor, in satisfaction of his judgment, than he is fairly entitled to receive, and that the levy must be held void in the case of such over-estimate, because, otherwise, the debtor will suffer injustice in having too much of his land transferred to the creditor. The necessity of protecting the debtor against this wrong is the prominent consideration presented in this argument, and this necessity equally exists in the case of an over-estimate of the incumbrance from an erroneous judgment of its value, proved by parol, as from a mistake in computing its amount, proved in like manner. If the

extent of an execution upon the debtor's land were to be regarded merely as a proceeding, the object and effect of which were to pay the debt in land instead of money, there would be great force in the views suggested. The object of the proceeding by extent is not thus to commute the payment of the debt, but rather to put the land in pledge for the security of the debt, and thereby constrain the debtor to fulfill his legal and moral obligation to pay in money, and in default of this to give to the creditor satisfaction in land. It is, therefore, inequitable to the creditor to take from him his security upon the land, and thus subject him to the risk of the loss of all satisfaction, either in money or land, by holding his extent to be void because of such mistakes or errors in the appraisers, unless no other way is open to the debtor to avoid the wrong which he may suffer from them. The decisions in this State have proceeded upon this as the more just and consistent view. Thus, in *Howard* v. *Daniels*, 2 N. H. 137, it is said, "the tenant had the power to redeem the land if estimated too low, and the extent being public, and recorded, it is highly probable if the estimate was in truth too low, that the tenant or some other creditor, would actually have redeemed, and thus have availed himself of any difference between its value and the debt of the demandant."

And in that case the levy was sustained, although proof was offered tending to show that the appraisers had made an under-valuation of from $500 to $700 in an estate worth about $4,000.

In *Horn* v. *Swett*, 2 N. H. 301, the appraisers by mistake over-estimated the amount due upon a mortgage incumbrance, and it was decided that this was not sufficient ground to avoid the levy. The court say, "if the land was actually worth more in money than the sum at which it was estimated, the debtor should have availed himself of the privilege which the statute gives him to redeem it, and if unable to do that he should have sold

Fletcher *v.* The State Capital Bank.

his right to redeem it." The decisions in *Burnham* v. *Aiken*, 6 N. H. 337, and in *Odiorne* v. *Mason*, 9 N. H. 24, proceeded upon the same general ground, that the levy is not to be avoided for error in the proceedings, if another remedy may be applied for the debtor. It is clearly safe, as it is equitable ground, to assume, in determining whether errors and mistakes of the appraisers which affect injuriously the rights of the debtor, shall have the effect to invalidate the levy, that they are not to be permitted to operate with this severity upon the creditor, unless there exists no other practicable and reasonable way in which the debtor's right may be protected. When such remedy exists for him, which may be applied consistently with his obligations and relations to the creditor, and which, when applied, will protect him against the wrong otherwise resulting from the erroneous proceedings, it would be inequitable to the creditor to resort to the severe remedy of holding the levy void.

In a case of this character, where the error of the appraisers consists in deducting too large a sum from the estimated value of the estate on account of the incumbrance, the debtor is relieved from all wrong by redeeming. In order to redeem he is required to pay only the sum at which the land was appraised, and interest upon it. He regains his land by the payment of a sum less than its value, upon the assumption that the error in the appraisal exists; and in making the payment to redeem he does nothing more than to fulfill to that extent the legal and moral obligation by which he is bound to the creditor to pay in money. This remedy is all which his protection requires. Nothing in the relation which he sustains as a delinquent debtor requires that he should have a better than this at the expense of his creditor.

The error of the appraisers, if proved, would not invalidate the levy. Upon all the grounds of exception taken to the defendants' levy, it must be sustained, and they are

consequently entitled to judgment. Various questions are raised by the case upon the motion to amend the returns, which are unnecessary to be considered. The finding for the plaintiff must be set aside, and the finding entered that the defendants did not disseize the plaintiff, and

*Judgment rendered thereon.*